IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MARCIA K. DENISON,                           07-CV-905-BR

        Plaintiff,

                                OPINION AND ORDER

v.

MARVIN BROWN, Oregon State
Forester, in his official
capacity; STEPHEN HOBBS;
BARBARA CRAIG; LARRY
GIUSTINA; CHRIS HEFFERNAN;
WILLIAM HUTCHINSON; JENNIFER
PHILLIPPI; and DIANE SNYDER,
members of the Oregon Board
of Forestry in their official
capacities; KENT GREWE and
MARTIN NYGAARD private
corporate persons; and S.J.
RICHARDSON, in his official
capacity as Judge of Oregon
Court of Appeals,

        Defendants.

1 - OPINION AND ORDER

**MARCIA K. DENISON**
P.O. Box 1463
Rainer, OR 97048
(503) 556-4012

      Plaintiff, *Pro Se*

**HARDY MYERS**
Oregon Attorney General
**SETH T. KARPINSKI**
**JESSE B. DAVIS**
Assistant Oregon Attorneys General
1162 Court Street, N.E.
Salem, OR 97301
(503) 378-6313

      Attorneys for Defendants Marvin Brown, Stephen Hobbs,
      Barbara Craig, Larry Giustina, Chris Heffernan, William
      Hutchinson, Jennifer Phillippi, Diane Snyder, and S.J.
      Richardson

**BLAIR J. HENNINGSGAARD**
P.O. Box 1030
Astoria, OR 97103
(503) 325-0151

      Attorney for Defendants Kent Grewe and Martin Nygaard

**BROWN, Judge.**

    This matter comes before the Court on the Motion of
Defendants Marvin Brown, Stephen Hobbs, Barbara Craig, Larry
Giustina, Chris Heffernan, William Hutchinson, Jennifer
Phillippi, Diane Snyder, and S.J. Richardson (State Defendants)
to Dismiss Second Amended Complaint (#36) and Plaintiff Marcia K.
Denison's Motions for Temporary Restraining Order (#30) and
Amended Motion for Judicial Lien (#31).  For the reasons that
follow, the Court **GRANTS** State Defendants' Motion to Dismiss and

2 - OPINION AND ORDER

**DENIES** Denison's Motion for Temporary Restraining Order and Amended Motion for Judicial Lien.

## BACKGROUND

The following facts are taken from Denison's Second Amended Complaint, the opinions of the Office of Administrative Hearings for the State of Oregon for the Oregon Department of Forestry, the opinion of the Oregon Court of Appeals, and the records in this Court.

On April 22, 1998, the Oregon Department of Forestry (ODF) executed a proposed land-exchange agreement with Defendants Kent Grewe and Martin Nygaard.  ODF held public hearings regarding the proposed exchange on April 17 and May 20, 2002.  On September 4, 2002, the Board of Forestry (BOF) approved the exchange.  A number of private citizens, including Denison, requested a hearing on the matter in September 2002.  An Administrative Law Judge (ALJ) held the hearing on May 27-30, 2003, and a number of individuals, including Denison, attended.

On August 18, 2003, the ALJ issued an order in which he ruled in favor of the land exchange except as to whether the BOF had complied with an Oregon Administrative Rule that requires a finding of "extraordinary circumstances" when monetary compensation exceeds 25% of the appraised value of the acquired property.

3 - OPINION AND ORDER

A number of petitioners, including Denison, filed exceptions to the ALJ's order.  The ODF modified the land exchange to comply with the ALJ's order and again brought the proposed land exchange before the BOF on October 24, 2003.  On January 29, 2004, the BOF heard oral argument and testimony from a number of individuals, including Denison, and approved the modified exchange.

On August 23, 2004, Defendant Brown issued a final order in his capacity as the Oregon State Forester in which he addressed the following contested issues:

>  (1)  Whether the Exchange complies with OAR 629-033-0045(1)[,] which requires the value received by the Department in an acquisition or exchange shall not equal less than the value of the property transferred.
>
>  (2)  Whether this exchange complies with OAR 629-033-0045(2), which requires a biological assessment of plant and wildlife resources on the parcels and a recreational resource assessment of the parcels for the purpose of determining if the transaction furthers the purposes of OAR 629-033-0010 and the goals and objectives of the Forest Management Plans.  The assessment of biological and wildlife resources on the parcels shall be conducted by a qualified independent third party.
>
>  (3)  Whether the exchange complies with applicable Forest Management Plans as required by OAR 629-033-0010(2), 629-033-0045(2), 629-035-0020 and 629-035-0030.
>
>  (4)  Whether this exchange complies with OAR 629-033-0010(1), which states that the exchange of forest lands is appropriate when the transaction furthers the purposes of ORS 530 010, the acquisition of lands chiefly for the production of

forest crops, watershed protection and development, erosion control, grazing, recreation or forest administrative purposes.

(5)  Whether this Exchange complies with OAR 629-033-0010(2), which requires that the exchange furthers the objectives of providing a full range of social, economic and environmental benefits to the people of Oregon for achieving greatest permanent value as defined in OAR 629-035-0020 as expressed in approved forest management plans.

(6)  Whether the Exchange complies with OAR 629-033-0010(3), which requires that the transaction results in the consolidation of state forest lands, or makes management of state owned lands more economically feasible, as well as meeting OAR 629-033-0010(1)(2).

(7)  Whether the Exchange complies with OAR 629-0030(3), which requires that the public notice of an exchange include a legal description and common name where applicable, and where to obtain staff analysis of the transaction.

(8)  Whether the Exchange constitutes "take" of threatened and endangered species and/or their habitat.

(9)  Whether the Exchange trades away parcels that provide current threatened and endangered species habitat, watershed protection, full-spectrum biodiversity, existing recreational trails and mature native forests, in return for parcels with young, monocultural tree farms, little biodiversity, little habitat for T & E species, degraded watersheds and no developed recreation areas, that are unnecessary to fulfill recreation, complex stand type & bio-diversity goals.  The Exchange fails to consider; the future fate of current qualities of land to be traded; ODF's hill range of management options available; effects of likely management actions by the new private owners upon the parcels and surrounding landscape, and

(10) Whether the Exchange has had meaningful public review-the Department and the Board of

> Forestry have shown a poor course of conduct by
> not being responsive to public allegations of
> errors and misrepresentations.

Karpinski Decl., Ex. 1 at 2-3 (quotations omitted).  Brown

concluded the exchange (1) complied with the above noted OARs;

(2) had meaningful public review; (3) did not constitute a taking

of threatened or endangered species or their habitat; and (4) did

not trade away parcels that provide current threatened or

endangered species habitat, etc.  He approved the exchange.

The petitioners, including Denison, sought review in the

Oregon Court of Appeals of the BOF's decision and Brown's

affirmance of that decision.  On December 13, 2006, the Oregon

Court of Appeals issued an opinion affirming the BOF's decision

and Brown's affirmance.  On April 24, 2007, the Oregon Supreme

Court denied the petitioners' request for review.

On June 19, 2007, Denison filed a Complaint against ODF in

this Court.  On June 26, 2007, the Court issued an Opinion and

Order in which it dismissed Denison's Complaint for failure to

comply with Federal Rule of Civil Procedure 8 and allowed Denison

to amend her Complaint to comply with that Rule.

On July 16, 2007, Denison filed an Amended Complaint against

Brown, Hobbs, Craig, Giustina, Heffernan, Hutchinson, Phillipi,

Snyder, in their official capacities and against the BOF seeking

declaratory and injunctive relief on the grounds that the

Grewe/Nygaard land exchange violated the Administrative

Procedures Act (APA), 2 U.S.C. § 1403-1407; the Endangered
Species Act (ESA), 16 U.S.C. § 1531-1544; the Clean Water Act
(CWA), 33 U.S.C. § 1251-1387; the Fifth, Ninth, and Fourteenth
Amendments to the United States Constitution;   Article 1,
Sections 1, 10, 20, and 33 of the Oregon Constitution; and the
Federal Land and Policy Management Act (FLMPA), 43 U.S.C.
§ 1716(e)(2).

On July 24, 2007, escrow closed on the land-exchange
property, and the deeds to these properties were recorded.

On August 24, 2007, before Defendants filed a response to
Denison's Amended Complaint, Denison filed a Second Amended
Complaint against Brown, Hobbs, Craig, Giustina, Heffernan,
Hutchinson, Phillipi, Snyder, Richardson, in their official
capacities, as well as Grewe, and Nygaard[1] on the grounds that
the Grewe/Nygaard land exchange violated the APA; the ESA; the
Northwest Oregon Forest Management Plan, 36 C.F.R. §§ 219.19 and
219.23; the Fifth, Ninth, and Fourteenth Amendments to the United
States Constitution; Article 1,  Sections 1, 20, and 33 of the
Oregon Constitution; FLMPA; the Security Exchange Act, 15 U.S.C.
§ 78; and Oregon's Fraudulent Conveyances Act, Or. Rev. Stat.
§ 95.130, *et seq*.  Denison requests the Court to:  (1) rescind
the exchange transaction and terminate the exchanges as void;

---

[1] In her Second Amended Complaint, Plaintiff did not include
the BOF as a party and does not assert claims against the BOF.

(2) rescind the transfer of the deeds; (3) reverse the orders of Brown and the Oregon BOF and require new appraisals of the land values; (4) require a survey of the tracts to determine action regarding Northern Spotted Owls and Marbled Murrelets; and (5) reverse the Oregon Court of Appeals and BOF decisions.

In addition, Denison also filed on August 24, 2007, a Motion for Judicial Lien in which she seeks an order approving a lien she attempted to have placed on the properties that are the subject of the Grewe/Nygaard land exchange on the ground that the transaction should be rescinded and the Oregon Court of Appeals decision reversed.

On September 19, 2007, Denision also filed a Motion for a Temporary Restraining Order in which she seeks an order restraining "all activities except for recreation, surveys or discovery . . . on all of the original public Board of Forestry (State) forest lands of the exchange during the course of litigation."

On September 21, 2007, State Defendants filed a Motion to Dismiss the Second Amended Complaint.

### DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

State Defendants move to dismiss Denison's Second Amended Complaint on the grounds that (1) Denison's claims against S.J. Richardson are barred by judicial immunity, (2) the Court lacks

8 - OPINION AND ORDER

subject-matter jurisdiction over Denison's claims against State Defendants pursuant to the sovereign immunity provided under the Eleventh Amendment of the United States Constitution, (3) the *Rooker-Feldman* doctrine prohibits the Court from reviewing the Oregon Court of Appeals decision, and (4) Denison's claims are barred by claim preclusion.

**I.  Standards**

On a motion to dismiss under Fed. R. Civ. P. 12(b), all allegations in the complaint are considered true and are construed in the plaintiff's favor.  *Meek v. County of Riverside*, 183 F.3d 962, 965 (9th Cir.), *cert. denied,* 528 U.S. 1005 (1999). "The Court need not accept as true, however, allegations that contradict facts that may be judicially noticed by the court, and may consider documents that are referred to in the complaint whose authenticity no party questions." *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000)(citations omitted).  The Court's reliance on judicially-noticed documents does not convert a motion to dismiss into a summary judgment motion.  *Kottle v. Northwest Kidney Ctr.*, 146 F.3d 1056, 1064 n.7 (9th Cir. 1998), *cert. denied*, 525 U.S. 1140 (1999).

When deciding a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1), the court may consider affidavits and other evidence supporting or attacking the complaint's jurisdictional allegations.  *Autery v. U.S.*, 424 F.3d

944, 956 (9th Cir. 2005).  When the court "receives only written submissions, the plaintiff need only make a *prima facie* showing of jurisdiction." *Rio Props., Inc. v. Rio Int'l Interlink,* 284 F.3d 1007, 1019 (9th Cir. 2002).  Plaintiff has the burden to establish that the court has subject-matter jurisdiction.  *Ass'n of Am. Med. Coll. v. United States*, 217 F.3d 770 (9th Cir. 2000).

When the plaintiff appears *pro se*, the court "must construe liberally [the plaintiff's] inartful pleading." *Ortez v. Wash. County,* 88 F.3d 804, 807 (9th Cir. 1996).  A court should not dismiss a complaint, thus depriving the plaintiff of an opportunity to establish his or her claims at trial, "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *United States v. City of Redwood*, 640 F.2d 963, 966 (9th Cir. 1981)(quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

Before dismissing a *pro se* litigant's complaint, the "*pro se* litigant must be given leave to amend his or her complaint unless it is 'absolutely clear that the deficiencies of the complaint cannot be cured by amendment.'" *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987)(quoting *Broughton v. Cutter Lab.,* 622 F.2d 458, 460 (9th Cir. 1980)(*per curiam*)).  If a *pro se* litigant is given leave to amend the complaint, the court must set out the complaint's deficiencies to assist the litigant in avoiding repetition of his or her errors.  *Karim-Panahi v. Los Angeles*

10 - OPINION AND ORDER

*Police Dep't*, 839 F.2d 621, 623-24 (9ᵗʰ Cir. 1988).

## II. Defendant Richardson Is Judicially Immune from Denison's Claims in this Action.

Judges are absolutely immune from liability for damages, injunctive relief, and declaratory relief sought as a result of judicial acts performed in their judicial capacity. *Moore v. Brewster*, 96 F.3d 1240, 1243-44 (9ᵗʰ Cir. 1996). "A judge is not deprived of immunity because he takes actions which are in error, are done maliciously, or are in excess of his authority." *Meek v. County of Riverside*, 183 F.3d 962, 966 (9ᵗʰ Cir. 1999)(citing *Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978)).

Here Denison's allegations and claims against Richardson involve actions that he performed in his capacity as a judge for the Oregon Court of Appeals. The Court, therefore, concludes Richardson is judicially immune from Denison's claims in this action.

Accordingly, the Court grants State Defendants' Motion to Dismiss with respect to Denison's claims against Richardson.

## III. Sovereign Immunity Bars Denison's Claims in this Action.

State Defendants contend Denison's claims are barred by State Defendants' sovereign immunity pursuant to the Eleventh Amendment of the United States Constitution.

The Eleventh Amendment provides:  "The Judicial Power of the United States shall not be construed to extend to any suit in law

or equity, commenced or prosecuted against one of the United
States by Citizens of another State, or by Citizens or Subjects
of any Foreign State."  Although the Eleventh Amendment does not
bar actions against a state by its own citizens on its face,
courts have consistently held an unconsenting state is immune
from actions brought in federal courts by her own citizens as
well as by citizens of another state.  *Mayweathers v. Newland*
314 F.3d 1062, 1069 (9th Cir. 2002).  *See also Bethel Native
Corp. v. Dep't of Interior*, 208 F.3d 1171, 1173 (9th Cir.
2000)(same).

In addition, the Supreme Court has held actions against
state officials acting in their official capacities are
equivalent to actions against the state itself and, therefore,
raise the same Eleventh Amendment concerns as actions against the
state.  *Chew v. Gates*, 27 F.3d 1432, 1446 n.15 (9th Cir. 1994)
(citing *Kentucky v. Graham*, 473 U.S. 159, 165-67 (1985)).

Despite the prohibitions of the Eleventh Amendment, the
Ninth Circuit has recognized

> [s]ince the Supreme Court's decision in *Ex parte
> Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714
> (1908), courts have recognized an exception to the
> Eleventh Amendment bar for suits for prospective
> declaratory and injunctive relief against state
> officers, sued in their official capacities, to
> enjoin an alleged ongoing violation of federal
> law. . . .  The *Young* doctrine strikes a delicate
> balance by ensuring on the one hand that states
> enjoy the sovereign immunity preserved for them by
> the Eleventh Amendment while, on the other hand,
> "giving recognition to the need to prevent

violations of federal law."

*Agua Caliente Band of Cahuilla Indians v. Hardin*, 223 F.3d 1041, 1045 (9th Cir. 2000), *cert. denied,* 532 U.S. 958 (2001).  The *Young* exception applies to violations of federal statutory rights as well as to violations of the United States Constitution. *Armstrong v. Wilson*, 124 F.3d 1019, 1026 (9th Cir. 1997)(citation omitted).

Denison has alleged claims for violations of state and federal laws and regulations.  To the extent Denison seeks to bring claims against State Defendants in their official capacities to redress past alleged violations of state laws and regulations, the Court concludes Denison's claims are barred by the Eleventh Amendment.

Denison also brings claims for violations of federal laws and regulations; *i.e.*, the ESA, the Oregon Forest Management Plan, FLMPA, the Security Exchange Act, and various amendments to the United States Constitution.  With respect to these claims, Denison seeks various forms of injunctive relief, only one of which is prospective:  requiring a survey of the land exchanged to determine action regarding Northern Spotted Owls and Marbled Murrelets.  The Court, therefore, concludes all of Denison's requests for injunctive relief that are *not* prospective with respect to her federal claims are barred by the Eleventh Amendment.

13 - OPINION AND ORDER

In summary, Denison's claims and requests for relief against State Defendants in their official capacities for past alleged violations of federal statutes and regulations are barred by the Eleventh Amendment with the exception of those claims against State Defendants in which she only seeks prospective injunctive relief.

**IV.  The *Rooker-Feldman* Doctrine Relieves the Court of Subject-Matter Jurisdiction over Denison's Claims.**

State Defendants contend even if Denison's claims against them are not barred by State Defendants' sovereign immunity pursuant to the Eleventh Amendment, Denison's claims are barred by the *Rooker-Feldman* doctrine.

*Rooker-Feldman* is a jurisdictional doctrine rather than a *res judicata* doctrine.  *Olson Farms, Inc. v. Barbosa*, 134 F.3d 933, 937 (9th Cir. 1998).  In *Robinson v. Ariyoshi*, the court, explained:

> the *res judicata* requirement of full and fair
> opportunity to litigate and the *Feldman*
> 'inextricably intertwined' barrier are two sides
> of the same coin.  Under the rubric of either
> 'jurisdiction' or '*res judicata*,' the crux of the
> question is whether there has already been actual
> consideration of and a decision on the issue
> presented.  If consideration and decision have
> been accomplished, action in federal court is an
> impermissible 'appeal' from the state court
> decision.  If no consideration has been given, or
> any decision on the matter is ambiguous, it is
> unlikely that the issues presented to the state
> high court and to the federal court are so
> 'inextricably intertwined' that the federal court
> cannot take jurisdiction.  Nor is it likely that
> there will have been a full enough and fair enough

> opportunity for litigation to warrant the claim
> preclusive effect of res judicata.

753 F.2d 1468, 1472 (9th Cir. 1985), *vacated on other grounds by*
477 U.S. 902 (1986).

Under the *Rooker-Feldman* doctrine, federal district courts lack jurisdiction over cases that, in effect, seek review of state-court judgments. *Craig v. State Bar of Cal.*, 141 F.3d 1353, 1354 n.1 (9th Cir. 1998). The doctrine bars a federal court's direct review of issues actually decided by state courts and bars a federal court's consideration of any claim "inextricably intertwined" with the state-court decision. *Id*. The *Rooker-Feldman* doctrine applies even when the challenge to the state-court decision involves federal constitutional issues, including those anchored in federally protected rights to due process and equal protection. *McNair*, 805 F.2d at 891.

According to Defendants, Denison seeks review of the Oregon Court of Appeals decision affirming the land exchange, and, therefore, pursuant to the *Rooker-Feldman* doctrine, this Court may not review that decision because Denison had the opportunity to raise all of the issues included in her Second Amended Complaint before the Oregon Court of Appeals.

Denison, in turn, contends the *Rooker-Feldman* doctrine was overturned by the United States Supreme court in *Exxon Mobil Corp. v. Saudi Basic Industrial Corp.*, 544 U.S. 280 (2005). *Exxon*, however, did not overturn the *Rooker-Feldman* doctrine, but

15 - OPINION AND ORDER

merely clarified the circumstances under which the doctrine would

apply.  *Id.* at 284.  In *Exxon*, the parties filed parallel cases

in state and federal courts, and the state-court action was

reduced to judgment before a decision was reached by the federal

court.  *Id.* at 289-90.  The Supreme Court concluded the *Rooker-*

*Feldman* doctrine did not apply because

> the pendency of an action in the state court is no
> bar to proceedings concerning the same matter in
> the Federal court having jurisdiction. . . .  But
> neither *Rooker* nor *Feldman* supports the notion
> that properly invoked concurrent jurisdiction
> vanishes if a state court reaches judgment on the
> same or related question while the case remains
> *sub judice* in a federal court.

*Id.* at 292(quotation omitted).  In addition,

> [the plaintiff] plainly has not repaired to
> federal court to undo the [state court] judgment
> in its favor.  Rather, it appears [the plaintiff]
> filed suit in Federal District Court (only two
> weeks after [the defendant] filed in [the state
> court] and well before any judgment in state
> court) to protect itself in the event it lost in
> state court on grounds . . . that might not
> preclude relief in the federal venue.  *Rooker-*
> *Feldman* did not prevent the District Court from
> exercising jurisdiction when [the plaintiff] filed
> the federal action, and it did not emerge to
> vanquish jurisdiction after [the plaintiff]
> prevailed in the [state] courts.

*Id.* at 293-94.

Here Denison filed her action in this Court after the matter

had been fully litigated through appeal in the state-court

system, and she clearly seeks in this action to undo the decision

of the Oregon Court of Appeals with respect to the land exchange.

16 - OPINION AND ORDER

Indeed, Denison raises various grounds in this Court on which she asserts the decision of the Oregon Court of Appeals should be reversed, some of which were explicitly raised at the state-court level and some that were not.  In any event, this Court concludes the claims Denison seeks to pursue in federal court are matters inextricably intertwined with the Oregon Court of Appeals decision, which affirmed the Grewe/Nygaard land exchange and Denison's unequivocal purpose in bringing this action is to undo the Oregon Court of Appeals decision.  This is precisely the circumstance in which the *Exxon* Court found the *Rooker-Feldman* doctrine applies.  Thus, the Court concludes it lacks subject-matter jurisdiction over Denison's claims pursuant to the *Rooker-Feldman* doctrine to the extent Denison seeks direct or indirect relief from the decision of the Oregon Court of Appeals.

Accordingly, the Court grants State Defendants' Motion to Dismiss Denison's claims to that extent.

**V.   Claim Preclusion**

To the extent any of Denison's claims are not barred by either sovereign immunity or the *Rooker-Feldman* doctrine, State Defendants also assert Denison's claims are barred by the doctrine of claim preclusion.

"Res judicata, or claim preclusion, 'bars any lawsuits on any claims that were raised or could have been raised in a prior action.'"  *F.T.C. v. Garvey,* 383 F.3d 891, 897 (9th Cir. 2004)

17 - OPINION AND ORDER

(quoting *Providence Health Plan v. McDowell*, 361 F.3d 1243, 1249
(9th Cir. 2004)).  Claim preclusion has the effect of
"foreclosing litigation of a matter that never has been
litigated, because of a determination that it should have been
advanced in an earlier suit." *Gospel Missions of Am. v. City of
Los Angeles*, 328 F.3d 548, 553 (9th Cir. 2003)(citing *Migra v.
Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984)).
The doctrine is applicable whenever there is "(1) an identity of
claims, (2) a final judgment on the merits, and (3) identity of
parties or privity between parties." *Owens*, 244 F.3d at 713.

An identity of claims exists when the two actions "arise out
of the same transactional nucleus of facts." *Id.* at 714.
"'Privity' is a legal conclusion 'designating a person so
identified in interest with a party to former litigation that he
represents precisely the same right in respect to the subject
matter involved.'" *F.T.C.*, 383 F.3d at 897 (quoting *Schimmels v.
United States*, 127 F.3d 875, 881 (9th Cir. 1997)).  Courts have
found privity when there is a

> substantial identity between party and nonparty,
> . . . the nonparty had a significant interest and
> participated in the prior action, . . . the
> interests of the nonparty and party are so closely
> aligned as to be virtually representative, and
> when there is there is an express or implied legal
> relationship by which parties to the first suit
> are accountable to nonparties [in] a subsequent
> suit with identical issues.

*Schimmels,* 127 F.3d at 881 (internal quotations and citations

omitted).  "Privity is a flexible concept dependent on the
particular relationship between the parties in each individual
set of cases." *F.T.C.*, 383 F.3d at 897 (quotation omitted). *See
also Va. Sur. Co. v. Northrop Grumman Corp.*, 144 F.3d 1243, 1247
(9th Cir. 1998)("It is the identity of interest that controls in
determining privity, not the nominal identity of the parties.")
(quotation and citation omitted).

The decision of the Oregon Court of Appeals was a final
judgment on the merits between Denison and the Oregon Department
of Forestry, Grewe, and Nygaard.  Defendants Brown, Hobbs, Craig,
Giustina, Heffernan, Hutchinson, Phillipi, and Snyder in their
official capacities are parties in privity with the BOF because
they are the members of the BOF that made the original decision
to approve the land exchange that was the subject of the Oregon
Court of Appeals opinion.  Finally, this action and the state-
court action "arise out of the same transactional nucleus of
facts"; *i.e.*, the land exchange and Denison's challenge to that
exchange.

The Court, therefore, concludes all of Denison's claims in
this matter that actually were litigated or could have been
raised in the state proceedings are barred by the doctrine of
claim preclusion.  Thus, all of Denison's state-law claims
against the state Defendants are also barred.

19 - OPINION AND ORDER

## DENISON'S MOTION FOR TEMPORARY
## RESTRAINING ORDER

Denison seeks a temporary restraining order prohibiting "all activities except for recreation, surveys or discovery or as ordered by this Court on all of the original public Board of Forestry (State) forest lands of the exchange during the course of litigation."

**I.    Standards**

To prevail on a motion for a temporary restraining order, the party seeking the order must show "(1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to Plaintiff if preliminary relief is not granted, (3) a balance of hardships favoring Plaintiff, and (4) advancement of the public interest (in certain cases)." *Calamore v. Juniper Networks Inc.*, No. C07-01772 MJJ, 2007 WL 1100313, at *1 (N.D. Cal. Apr. 12, 2007)(citing *Rodde v. Bonta*, 357 F.3d 988, 994 (9th Cir. 2004)).  Alternatively, a court may grant injunctive relief if the party seeking relief "demonstrate[d] either a combination of probable success on the merits and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in [her] favor." *Id.* (quoting *Rodde,* 357 F.3d at 994).  These two alternatives represent extremes of a single continuum rather than two separate tests. *Clear Channel Outdoor Inc. v. City of Los Angeles*, 340 F.3d 810,

20 - OPINION AND ORDER

813 (9th Cir. 2003).

**II.  Analysis**

Based on the Court's dismissal of Denison's claims on the grounds of sovereign immunity, the *Rooker-Feldman* doctrine, and claim preclusion, the Court concludes Denison has not yet established any likelihood of success on the merits or that serious questions are raised in this matter.

Accordingly, the Court denies Denison's Motion for Temporary Restraining Order.


**DENISON'S MOTION FOR JUDICIAL LIEN**

Finally, in her Amended Motion for Judicial Lien, Denison seeks an order approving a judicial lien against the property that was the subject of the Grewe/Nygaard land exchange.  To support her Motion, Denison relies on Oregon Revised Statutes § 95.230(1)(a) and (b) and 2(c), (d), (g), and (h).

Oregon Revised Statutes § 95.230 provides in pertinent part:

> (1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> (a) With actual intent to hinder, delay, or defraud any creditor of the debtor; or
>
> (b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

21 - OPINION AND ORDER

> (A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>
> (B) Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they become due.
>
> (2) In determining actual intent under subsection (1)(a) of this section, consideration may be given, among other factors, to whether:
>
> * * *
>
> (c) The transfer or obligation was disclosed or concealed;
>
> (d) Before the transfer was made or obligation was incurred, the debtor was sued or threatened with suit;
>
> * * *
>
> (g) The debtor had removed or concealed assets;
>
> (h) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.

By its terms, § 95.230 applies to transfers that are "fraudulent as to present and future creditors." Oregon Revised Statutes § 95.260 provides remedies for creditors who are affected by the fraudulent transfers described in § 95.230, but nothing in Oregon Revised Statutes chapter 95 provides a cause of action or remedies for individuals who are neither creditors nor good-faith transferees of property. In this case, Denison is neither a creditor of the State of Oregon, Grewe, or Nygaard, nor

22 - OPINION AND ORDER

a transferee of the land at issue in the land exchange.  The
Court, therefore, concludes Denison may not bring a claim under
§ 95.230 to challenge the land exchange at issue in this matter.

Accordingly, the Court denies Denison's Amended Motion for
Judicial Lien.


## CONCLUSION

For these reasons, the Court **GRANTS** State Defendants' Motion
to Dismiss Second Amended Complaint (#36) and **DENIES** Denison's
Motion for Temporary Restraining Order (#30) and Amended Motion
for Judicial Lien (#31).

Because Denison appears *pro se*, however, the Court grants
her leave to amend her Second Amended Complaint no later than
January 4, 2008, to attempt to cure the deficiencies as set out
in this Opinion and Order as to her claims against State
Defendants in their official capacities.  In addition, Denison
must separately state any claim she seeks to pursue against
Defendants Grewe and Nygaard, who are private individuals, to
ensure those claims are not precluded by the state-court action.
If Denison chooses not to file an amended complaint by January 4,
2008, or if the amended complaint does not cure these
deficiencies, the Court will dismiss this matter in its entirety

23 - OPINION AND ORDER

with prejudice.

     IT IS SO ORDERED.

     DATED this 10th day of December, 2007.


                             /s/ Anna J. Brown

                             _____

                             ANNA J. BROWN
                             United States District Judge